You may proceed. Good morning. Good morning. I'm Nicholas Aceto and I represent the appellant CoreCivic. To properly resolve the class certification issues that are presented in this appeal, it is critically important to understand what the plaintiff's claims actually are. Regarding the forced labor claims, they are not policy-based claims. They are grounded in the allegation that CoreCivic is a practice, a practice of forcing detainees to clean common living areas under threat of punishment. Rule 23 protects defendants like CoreCivic from such scurrilous claims by requiring plaintiffs to present at the class certification stage significant proof that the alleged practice in fact exists. I'd like to start with that issue because plaintiffs have not provided such proof. Plaintiffs contend that the sanitation policy and the disciplinary code, which were required and approved by ICE, can be construed in tandem to authorize forced cleaning. But how the plaintiff's lawyers interpret those policies is irrelevant. Indeed, there is no evidence that any detainee felt compelled to clean a common living area after having read either one. What matters is how those policies are being implemented. And on that question, plaintiffs have only four declarations, all from detainees at one facility who claim that they were ordered to clean common living areas on occasion and that they feared punishment if they refused. Is there any contrary evidence in the record? Yes, your honor. CoreCivic presented sworn testimony from at least 11 officials, wardens, directors of operations, and others responsible for implementing and supervising these policies. And they all testified and swore that the sanitation policy only requires detainees who participate in the voluntary work program to clean common living areas as part of their assignments. And it does not require any other detainee to clean common living areas. And it also does not require any detainee to clean. Even if you're participating in the VWP, if you do not want to work, you do not have to work. So that is the evidence. Yeah. So my question is, I mean, this issue of what evidence do you have to have at the class certification stage is an interesting question because if you have uniform evidence from one side and you have uniform evidence of the contrary from the other side, do we then have to say, well, it's disputed and therefore we can't certify? No, I think that a district judge has to resolve any conflicts that it believes is in the evidence in order to ensure, and as part of conducting its rigorous analysis, that rule 23, that each element is satisfied. This court made that clear in Wang and where there was issues. But the core of my question is, if it's enough to defeat class certification that the defendant denies the truth of the uniform allegations on the other side, when are we ever going to get a certified class? Well, we're only talking about the existence of an alleged practice here. And we're dealing with more than just a denial. We're dealing with sworn testimony and comparing that to the proof of the plaintiff. Well, I understand. I understand sworn testimony. That's the nature of evidence. But that doesn't quite get to my question because, as I understand your position, it is that even though you've got relevant evidence on the one side that describes something that's perfectly uniform, you say, well, I've got something on the other side that's evidence, that's admissible evidence, that's sworn evidence. I mean, that's what evidence is. That defeats it. That's a pretty easy way to defeat class certification. Well, if the standard were that they can present any evidence no matter how significant or not, then every class would be certified. But I think under Walmart, Walmart's very instructive for two reasons. One, it says that no longer can plaintiffs merely rest on their allegations. And two, they have to provide significant proof. So there is a threshold there. It's our position that these four declarations don't even rise to that level of their burden. Even if you consider it in a vacuum, if you consider those four declarations, that's not enough. However... Do we look? Another point to add into the calculus is really the standard of review. Because if we're sitting here trying to make our own decision, we might come out differently. But in an abuse of discretion situation, which we have here on appeal, can we actually say that the district court made an error either of law or in her evaluation of the evidence? And so it seems to me that standard insulates the kind of diametrically opposed situations that you and Judge Fletcher are talking about, doesn't it? It does, and I think that that's a good point, Your Honor. However, the error of law, which is an abuse of discretion, is when the district judge just punted and said, there's an issue of fact, I'm not going to resolve it at this stage. But the district judge was required to resolve it because it goes centrally to the issue of commonality. That is an error of law, and that can be held to be an abuse of discretion. In addition, whether or not something constitutes significant proof is also a legal question at this class certification stage. And so I do think that if this court reviews the evidence presented and determines that those four declarations do not meet that threshold, that is a basis for an abuse of discretion. You know, there's a safety valve, and that is if evidence comes in as you get further down the road and supports your position that there's really very inconsistent practice from one prison to the next, there's decertification. Some would call that a safety valve. Others would call that a very expensive endeavor. It may be both, yes. I mean, to have to move on from this stage in a nationwide class action, 24 facilities, is a very, very costly endeavor, which is why the Supreme Court has repeatedly said that this class certification decision initially is pretty critical. It's very critical, and that's why they impose this rigorous analysis requirement. And that's why they have increased the scrutiny that must be applied to these decisions. So we may have arguments down the road, but this was the point in time for the plaintiffs to come forth with their evidence. They had class discovery. This was their moment, and they did not rise to that occasion. And for that reason, on that point alone, lack of significant proof of forced labor classes should be decertified. I'm sorry, the class certification classes should be vacated. I would like to move to the predominance inquiry. And on that question, again, we believe that the district court erred because when you look at the TVPA and California TVPA statute, in order to establish a violation of either one, there is a multitude of individual inquiries that a jury is going to have to resolve for each and every class member. They're going to have to determine several things. For instance, was the class member, was the detainee actually aware of this practice? Had they seen it anywhere in writing? Had they been told about it? Had they, in fact, experienced it? Without any knowledge or awareness that this practice even existed, it cannot be said that they were coerced to do anything. That's one question. Another question is, if they were aware of the policy of this practice, if the practice existed and they were aware of it, what was it they were threatened with? Because when we're dealing with a detention facility, as this court knows, there's rules. We must follow those rules. But, you know, if they were organizing a work stoppage, that's a disruption of the facility. That puts the staff and the detainees in the facility at significant risk of a security breach. There are rules in place and there can be certain that is alleged, does that arise to the level of a serious harm or to a physical threat or something that qualifies under the statute. But did not, does not, does not the record reflect that the whole policy of CoreCivic was predicated on standardized written policies? That's what the allegation is, but the... As to all of, all the members of the class, there were standardized written policies that is alleged to have constituted an overwhelming policy of wrongdoing. That is what the allegation is, Your Honor. But the only policy, written policy, is the sanitation policy. And the other, the other policy that they're referring to is the disciplinary code. Both the policy and the code are required by ICE. It's included in the implement. Neither of those two things say that you are required to clean common living areas under threat of punishment. These are two separate documents. One is an internal document. One is a document that is on page 43 of the detainee handbook that just lists in pro forma the different violations that they can be held accountable for. So there's nothing connecting those two in any written policy. It's our position that the sanitation policy nowhere says that they're required to clean. In fact, the policy says that it's detainee inmate workers that are, that are responsible for the cleaning. But your argument, your argument then is, in terms of the predominance issue under Rule 23b-3, that it, that isn't sufficiently cohesive a requirement that was noted by the Supreme Court in the Amgem case, the key case of the Supreme Court, that that is not in and of itself sufficiently cohesive to satisfy the elements of predominance under 23b-3? I, I, I believe that's probably another way of putting it, Your Honor. But, you know, again, you've got these two documents and they are trying to merge them together and say that this is a policy or that these policies together in tandem are implemented in such a way as to coerce detainees to work. But you rely, you keep pointing to Walmart, you know, overall on your case, and of course it's very instructive, but didn't the Supreme Court later say in the Tyson's Food case that Walmart hadn't reached this b-3 issue? Walmart did not touch on b-3. That, that's correct. So as you started out your commonality, your predominance argument, I thought you were starting out with Walmart, which didn't reach the issue. So that's where I was somewhat confused by your argument. Well, I think what Walmart does, does touch upon, Your Honor, is in, in determining whether there are common questions of, of issues of fact or law, you have to take into consideration whether there are individualized differences. And then when you shift to b-3, then you have to determine whether any common questions that do exist, whether or not they predominate or not. So a lot of times courts will consider them in tandem. And we are, that is how our argument is phrased. Any one of these questions, common questions, aren't common at all, because no common, no one question can resolve whether or not any class members rights were, or whether CoreCivic violated anyone's rights under the TVPA. You have to go through these series of inquiries. And that's why not only is there lack of commonality, but certainly lack of, of predominance. If there are any common questions, there are far away by the necessary to determine whether any one class member has a claim. I know, I don't want to take up all your rebuttal time, but I do have, I want to jump ahead, if I could, to these California labor law class and the cases we had asked you to be prepared to discuss. Because I was interested in whether the statute of limitations question and the possible time barring of certain of these individual people, Gomez and Owino, basically affects how the district court should have evaluated that. So, taking what you argued before, but also addressing this suburban propane and also the Hannon case that we referenced, I would appreciate your comments on that. Sure, and thank you. It's our position that Owino is time barred on all of his claims. And as, as the court had out in Hannon, Hannon specifically says, if a class representative is going to be bogged down with defending unique, or defending against unique defenses that we bring, for example, statute of limitations, they're not an adequate or they're not, yeah, they're not an adequate class representative and they should not be representing the class. Same goes for Gomez. Now he did file, he, all but the UCL claim would be time barred for him because he filed less, or his, he last worked less than four years, but more than three years before the complaint was filed, so. But if, if most of the claims that are kind of subsidiary claims would really also be covered by UCL, would it matter? It would matter. Some of them would be covered under the UCL, but that's when you get in, but there are difference, there is a difference between which damages you can collect once they are being pursued through the UCL. So, I know that the essentially punted and said, well, it really doesn't matter because they can still backdoor these in through the UCL claim. It does matter. They are separate claims. And, and even though Gomez may be able to be a class rep on the UCL claim, neither he nor Owino can or should represent the labor class on any of the other claims. And the subclass should be vacated to the extent that they are based on anything other than the UCL claim. Thank you. Do you want to reserve your remaining 33 seconds? That'd be great. Thank you. But don't worry, I am going to give you some rebuttal time. Okay. Thank you. Good morning. May it please the court, Eileen Ridley on behalf of the plaintiffs, Owino and Gomez and the class certified. Your honors, I think it's important to note that there really is a standard question that is question is, was there a standard policy such that they were forced to work and they experienced a threat to work. And then of course, on the labor side, whether or not they were properly compensated for, for their work. It's important to note that each of the plaintiffs didn't choose to be in these facilities, nor however, were they either charged or convicted of any crime. They're awaiting their immigration status. And there is no question that we have shown evidence of a policy, actually policies, both the disciplinary policy, as well as the sanitation policy. They're written documents, no matter what facilities involved, they're virtually the same. And importantly, what is constantly avoided by my colleague is the fact that we deposed their corporate representative, Mr. Ellis, and Mr. Ellis himself confirmed that these policies were in fact, template policies. They came from the facility support center, which was in the headquarters and issued to each one of the facilities that in fact, they were quote unquote, generic, that no one, no facility could opt out of them. That if they were to be modified or altered, there would have to be approval. And to his knowledge, none of the facilities opted out of either disciplinary policy or the sanitation policy. On top of that, so we have the numerous written policies from various facilities. We have the testimony of their corporate designated witness. And then we have the declarations from our clients and other witnesses. Now, if opposing counsel suggesting we should have had declarations from every single one of the detainees, I will note that in fact, when we would not permit that to happen prior to the certification here. That being said, we have shown significant proof. The issue with regard to Walmart was that you couldn't just have a theoretic theory. There had to be some evidence of what the allegations were. We have clearly reached that goal. And to the court's question with regard to, you know, what would happen if there's a dispute with regard to the evidence? No, at the certification stage, the issue is if there is significant proof, significant evidence. There may be contradictory evidence, but that does not, and Walmart never said that does not negate the ability to certify a class. More importantly, on the discretionary standard, the court itself noted that the written policy in combination with the declarations was, quote, significant proof adequate to certify the class. That's page 10 of the order regarding the motion for reconsideration, volume one at page 11 of the record. There is no question the court didn't punt, not only did a motion for reconsideration, but had a 59 page certification order looking at all of the evidence and found that there was appropriate grounds for the class to certify. With regard to the standard, with regard to the claim by CoreCivic that there are individual questions, that's just not the case. You can see in both Medi-Cal and Novova that, in fact, that's not the question. The is a policy, and it's important to note that the standard is a reasonable person. It is an objective standard. It's not the individual experience. It is a reasonable person in the place of the victim. That is not putting a subjective standard in place. It is saying, would a reasonable person in the same circumstances as the victim or plaintiff here believe, in fact, that they were coerced to work? Here, there's no question about it. In fact, the evidence shows the reason for these sanitation and the disciplinary policies is to control the people within the detainee facility. It is specifically meant to do that. Again, no facility could opt out of it. No one could modify it without approval. In fact, according to their witness, no facility did modify those things. CoreCivic says, well, we have X number of declarations, notably declarations that came after the sworn deposition testimony of their class representative or, excuse me, a representative witness for the corporation. To suggest that a defendant in face of, frankly, admissions in deposition could then have several declarations to counter those admissions and thereby thwart a class is inappropriate. That's not what Walmart says. There's no authority for that. That representative was the sole 30B6 designee. Is that correct? That's exactly right. And no other 30B6 designee was named. That was the one 30B6. Okay. And specifically on these issues. If I may, I thought I would then address the court's question with regard to the Hannon and the state of Alaska cases, if I may. So the statute of limitations issue, first of all, there is authority noting, and we cited it in our brief, that the issue or the question of statute of limitations need not be resolved at the certification. We don't believe either Owino or Gomez has claims that would be dismissed based on the statute of limitations. They both, as we noted in our papers, worked and worked within the time period of when the complaint was filed. More to the point, we also have other plaintiffs that even if they were, we could substitute in plaintiffs. Regardless, with regard to the Hamlin and the Alaska case, we don't believe they are applicable. And here's why. In the Hamlin case, you had essentially, first of all, neither is an employment case. Second, in the Hamlin case, you had essentially a professional plaintiff who had essentially devised a way to bring the suit. And devised it in a way that was very efficient, having a small number of shares to essentially place himself in an ability to bring the suit. That's not here. In Alaska, that's an antitrust suit. And the issue there was unique because it included a governmental entity that in and of itself could affect the marketplace. And that, again, is not the case here. I mean, there is some tension. Recognize those are not employment cases. But the principle of how you look at class certification is not really unique to a particular subject matter. So we do have the cases that you did talk about first, which is that you don't have to resolve the statute of limitations up front. But that's a little bit different than whether the named representative plaintiff is appropriate and whether the statute of limitations question is really going to affect whether or not that person can go forward as a named representative. So it does seem there could be some tension in these cases, but they may also be able to be resolved in terms of principle. So in the case of Mr. Owino, the CoreCivic Council says, well, all of the claims would be barred. What is your position on Mr. Owino? Our position is that that is not the case, that, in fact, he worked at the facility in each circumstance and that, in fact, that the evidence will show that his claims are not barred based upon the time frame of working. There is some discovery still to be done on that, there's no doubt. We have some issues because, of course, CoreCivic didn't retain all of the records necessary. Notably, neither Mr. Owino nor Mr. Gomez have been deposed, although that was certainly available to CoreCivic prior to the certification motion. But it's our belief that, in fact, he would, in fact, survive that claim. We certainly think Mr. Gomez survives all of the claims as well. We believe the UCL, frankly, extends all of the claims with regard to the labor code provision. And then, as I said, we've already identified, for example, Mr. Gay, other plaintiffs who, if that were not the case, and Gay is G-E-H, if that were not the case, we could easily substitute a representative. I'll note two things. I just wanted to ask you, too, on Gomez, the district court seemed to take the position that he would remain, of course, under the umbrella of the UCL claims and the UCL claims. Of course, Mr. Asado here says, well, that may be true, but the damages are very different in terms of the claims under UCL and some of the other what we're calling subsidiary claims. Does that affect the class certification at this stage? No, it does not. And in particular, it does not because the UCL actually extends the other claims as well, which we've given case law with regard to that as well. And in fact, it doesn't affect the identification of the class with regard to the minimum wage issue because it is part of the, it would come under restitution as well if it were a direct damage. The other aspect I would note with these two cases is to note two other cases which I think are instructive on this issue. One is Gonzalez versus the United States Immigration and Customs Enforcement. That's at 975F3rd 788809-810 from the Ninth Circuit. Is that cited in your brief? I believe it is. If you would just check and if it's not, send us a 28-J letter simply so we have the citation in writing in case our handwriting is unreadable at the end of this. I will do that, Your Honors. I would note in that case, the Ninth Circuit held that a detainee who was held in county jail on an immigration detainer after being arrested on state charges was still a proper class representative to challenge lawfulness of ICE's immigration detainer policy, even where that representative was actually a U.S. detainer due to a mistake. And the immigration detainer was canceled within hours after the class representative filed suit, which ICE argued rendered the suit moot. So even in that circumstance, because of that individual's experience with regard to these standard policies and the like, was still considered an appropriate representative plaintiff. And I would finally note in a case called Just Film, Inc. v. Buono, 847 F. 3rd, 1108-1116, Ninth Circuit in 2017, the requirement regarding typicality is that the representative claims are typical if they're reasonably coextensive with those of the absent class members. They don't need to be substantially identical. So even if they were different times with regard to work, et cetera, they can still be representative class party. And with that, I realize I only have about a minute and a half, but I believe I've addressed the major issues, unless the court has more questions. There's not. Thank you. Thank you. Thank you, Your Honor. I'd like to address my colleague's assertion that this case is based on standardized policies. There is a standardized sanitation policy. There are standardized disciplinary codes. Those come from the PDNDS and from ICE. But at most, that's only evidence of what they are alleging the practice is, because neither of those documents say that detainees are forced to clean common living areas under threat of punishment. There's nothing in the disciplinary code or the sanitation policies. What they want this court to believe is that what I just stated is somewhere in a policy and it does not exist. All that Ellis testified to was that, yeah, these are standardized policies that are generally used at all facilities, but that's not the question. The question is, how are they being implemented? And on that question, there's not significant proof that they are being implemented as they say they do. And I point this court to Davidson versus O'Reilly Auto Enterprises, and we cited this in our brief. That Ninth Circuit case said, the mere existence of a facially defective written policy without any evidence that it was implemented in an unlawful manner does not constitute significant proof. And that's what we're talking about today, is whether or not they have significant proof that these policies actually say or are implemented in as they say that they are. And on that question, the answer is they do not. On the issue of the subjective inquiry under the TVPA, it is our position that Headley controls that question, not United States versus Dan, but Headley. Headley addressed the by means of element. Headley is directly on point and controls all of these other cases that they're citing either predate Headley or cite cases from outside of this jurisdiction. Headley controls and this court's bound by it. Finally, just on the point that my colleague's assertion that we prevented them from reaching out to their clients, that's not true. And if that were the case, I'm sure they would have reached out to the court. They did not. Unless the court has any further questions, I have nothing further. Thank you. Thanks both counsel for the extensive briefing and also the argument here. AUENO versus CoreCivic is submitted and we're adjourned for the morning.
judges: McKEOWN, FLETCHER, Bennett